UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERIN GROGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:25 CV 224 RWS |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Erin Grogan brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  For the reasons set forth below, I will affirm the decision of the Commissioner.

**Procedural History**

Plaintiff Erin Grogan was born on December 20, 1977.  (Tr. 227)[1]  She is currently 48 years old.  Grogan completed two years of college earning an associate degree in mass communication.  (Tr. 292 and 646)  In the past several years before she applied for disability benefits Grogan worked in retail businesses and as a bookkeeper for her husband's lawncare business.  (Tr. 292-293)  Grogan had employment earnings of $1883.18 in 2019 and $3,247.70 in 2020.  (Tr. 260)  Grogan has not engaged in substantial gainful employment since April 2, 2021, the alleged onset date of her disability.  (Tr. 37)

Grogan protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on July 21, 2022.  (Tr. 216)  She alleged her disability began on April 2, 2021.  (Id.)  Grogan's applications were initially denied on February 10, 2023.  (Tr. 135)  The applications were denied again upon reconsideration on June 30, 2023.  (Tr. 143)  On August 15, 2023, Grogan filed a request for a hearing before an Administrative Law Judge (ALJ).  (Tr. 151)   The ALJ held a hearing on March 19, 2024.  (Tr. 35-46)

In her Function Report, completed on June 28, 2022, Grogan asserted that she was unable to work based on a learning disability ("limits how fast I work"),

---

[1] Citations to the transcript (Tr.) use the page numbers assigned to the documents in the Court's ECF docket sheet.

2

anxiety, and depression.  (Tr. 264)  Her Disability Report, completed on October 28, 2022, lists the following medical conditions that limit her ability to work: depression; anxiety; language disorder; "impairment math;" chronic migraines; delayed motor function; stress; attention deficit disorder; and "reaction time."  (Tr. 291)  Grogan takes the following medications: gabapentin, nortriptyline, indomethacin, promethazine, lessina, and atenolol for migraine relief; meloxicam for tendonitis relief; sertraline for depression; and buspirone for anxiety. (Tr. 356).  At the hearing before the ALJ, Grogan testified she has a migraine headache every morning when she wakes up and "pretty much every day before I go to bed."  (Tr. 57)  She testified that she take atenolo and gabapentin to treat her migraines.  The medication helps with her migraines.  She stated that around the time of her disability onset date, she was involved in a car accident that exacerbated her preexisting anxiety and headaches.  (Tr. 56)  She sometimes puts a pack of ice on her head to relieve symptoms.  If she tries to stay "relax[ed] and focused on one particular thing [it] helps a lot of times," and keeps the migraines away so she can do her daily activities.  (Tr. 59)

Grogan testified that she makes dinners from recipes but lately she has been depressed which keeps her from doing things around the house.  (Tr. 60)  She stated that she and her husband are both home every day but that she can take care of her personal needs like getting up and getting dressed.  Her only concern was

that she has to have a reminder to take her medicine every day for her anxiety and migraines.  (Id.)  She can open bottles and carry a gallon of milk and grocery shop.  But when she gets home she takes breaks putting her groceries away because she gets tired.  She was diagnosed with scoliosis when she was in grade school and had rods placed in her back.  Her hips, knees, and ankles hurt from when she is on her feet for a couple of hours at work.  (Tr. 61)  She helped her husband in the past performing yard work for his lawncare business.  (Tr. 63)  She also did the bookkeeping for her husband's business.  (Tr. 66)  Grogan testified that she and her husband no longer work.  (Tr. 63)

Grogan testified that she suffers from anxiety and sees a counselor who has provided her with some coping skills.  When she experiences anxiety she wants to get up and pace the room even though she knows that she should not be doing that.  (Tr. 63-64)  She is concerned that if someone happens to trigger her anxiety in the workplace she won't be able to walk away in order to control it.  (Tr. 65)  She testified that she gets anxiety when she goes to the store and in public settings, and once, there was a point when she would feel safer in her own home than being in a store because her "anxiety was at an all-time high."  (Id.)

Grogan testified she had previously worked as a clerk at Good Will and entered inventory into a computer.  She stated that she was told she was working too slowly which triggered her anxiety causing her stress and to have migraines.

(Tr. 67)  She testified that when she got migraines at Good Will she needed to stop what she was doing.  (Tr. 69-70)  Good Will accommodated her by letting her stop work or to go home.  (Tr. 70)  Good Will terminated Grogan's employment when she had an altercation with a supervisor over processing donated shoes. (Tr. 71) (She allegedly called her supervisor inappropriate names which led to her termination. (Tr. 113))  Grogan was employed at some point at Panera but it did not work out because she was being pressured to complete tasks quickly, which she could not do.  (Tr. 72)  She sometimes has trouble completing tasks because "other things get in the way."  (Tr. 72)   She can feel overwhelmed even with daily tasks when "several things [are] going on at once."  (Tr. 73)  When cleaning her house she uses timers to alert her how long to work on a task and when to take breaks.  (Id.)  She uses relaxation techniques / breaks to relieve her headaches. When she uses ice packs on her head to relieve her migraines she is usually in bed for the whole day.  This can happen about three times per month.  (Tr. 74)

On April 3, 2024, the ALJ issued a decision finding that Grogan was not disabled and that she could perform light work.  The ALJ found that Grogan could perform jobs that exist in significant numbers in the national economy.  (Tr. 45-46) On January 10, 2025, the Appeals Council denied Grogan's request for review. (Tr. 21)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g).

In this action for judicial review, Grogan contends that the ALJ failed to fully and fairly develop the record and that the RFC determination is not supported by substantial evidence.  Grogan requests that I reverse the Commissioner's final decision and remand this matter for further evaluation.  For the reasons that follow, I will deny Grogan's request to remand this matter for further proceedings.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Grogan's statement of material facts (ECF # 16-1) as admitted by the Commissioner and the Commissioner's additional material facts (ECF # 19-1). Additional facts will be discussed as needed to address the parties' arguments.

**Discussion**

A.    Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only

if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[2] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If

---

[2] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.[3] If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

---

[3] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

as any evidence that fairly detracts from the decision.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency.  20 CFR § 404.1520c(a).  The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski

v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[4]  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that Grogan had not engaged in substantial gainful activity since April 2, 2021, the alleged onset of her disability. (Tr. 37)  The ALJ found that Grogan had the following severe impairments: scoliosis; migraines; generalized anxiety disorder; and major depressive disorder. (Tr. 38)  The ALJ found that Grogan has a moderate limitation in understanding,

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

remembering, or applying information.  She also has a moderate limitation in interacting with others.  (Tr. 39) The ALJ determined that Grogan has moderate limitations in concentrating, persisting, or maintaining pace and moderate limitations in adapting or managing oneself.  (Tr. 39-40)  The ALJ determined that Grogan's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 38) The ALJ found Grogan to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [Grogan can] can lift or carry 20 pounds occasionally and 10 pounds frequently.  The claimant should avoid ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs, stoop, or bend. The claimant should avoid hazards such as unprotected heights and dangerous moving machinery; she should avoid more than moderate level of noise; should avoid hot and cold temperature extremes; should avoid concentrated dust, gas, fumes, and other pulmonary irritants. The claimant is able to understand, remember, and carry out simple, routine job tasks with little to no change in routine and may have occasional contact with co-workers and supervisors but no close tandem work.  The claimant should avoid the general public.

(Tr. 40-41)  The ALJ determined that Grogan is unable perform any past relevant work.  (Tr. 44)  The ALJ consulted a vocational expert (VE) to assess whether jobs within Grogan's RFC existed in significant numbers in the national economy.  (Tr. 46)  The VE identified the jobs of a price marker (138,000 positions); routing clerk (123,000 positions); and router (25,000 positions).  (Tr. 46)  The ALJ therefore

determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. Id.)

C.      Grogan's Objections to the ALJ's Decision

Grogan asserts that the ALJ failed to fully and fairly develop the record. The file contains examination reports and opinions from two state agency psychological consultants (Mark Altomari, Ph.D. and Kim Stalker, Psy.D.); two state agency medical consultants (Charity Sandvos, M.D. and Nancy Ceaser, M.D.); a consultive psychological examiner (David Lipsitz, Ph.D.); a psychotherapist (Michael DiBernardo, LCSW); and an internal medicine practitioner (Sean McLaughlin, M.D.).  Grogan acknowledges that the ALJ considered the evidence from these professionals but asserts that the ALJ's decision failed to sufficiently explain how the supportability and consistency factors for these medical opinions were considered by the ALJ.  She also asserts that the RFC is not supported by substantial evidence.

***The record was fully and fairly developed***

An ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20

12

C.F.R. § 404.1520c(c)).  "The first two factors—supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)).  Under the revised regulations, "treating physicians are not entitled to special deference." Id. (citing 20 C.F.R. § 404.1520c(a)).

A claimant's allegation of an ALJ's "deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.  An ALJ's reasoning need only be clear enough to allow for appropriate judicial review. The ALJ's brevity is not reversible error." Grindley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021) (internal quotations and citation omitted).

The ALJ's reasoning in this matter is sufficient to allow judicial review.  In assessing Grogan's mental limitations, including her symptoms of depression and anxiety, the ALJ found the findings of state agency psychological consultants Dr. Altomari and Dr. Stalker partially persuasive (Tr. 43-44).  Dr. Altomari reviewed the available evidence at the initial level of administrative review and determined that Grogan:

> can understand, remember and carry out simple instructions. She can generally relate appropriately to coworkers and supervisors in small numbers and for short periods of time. She can be expected to perform best in a work setting where she can complete tasks relatively independently and where social interaction is not a primary job requirement. She can make simple work related decisions. Her ability to adapt to routine changes in the workplace is intact for most situations.

13

(Tr. 91 and 102)

Dr. Stalker conducted the administrative review at the reconsideration level and found that Grogan was moderately limited in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods.  (Tr. 113)  She also "would be less comfortable if a vocation required moving around to new locations or transfer of jobs, which required new learning and would be a difficult tasks.  [And] would be capable of performing one to two step instructions and would be able to attend on a regular schedule with good hygiene. She is recommended working with limited socialization."  (Tr. 113-114)

The ALJ found these opinions to be supported by "generally adequate explanations with discussions of objective evidence" in the reports provided by these consultants.  (Tr. 43)  However, the ALJ found that Dr. Stalker's opinion that Grogan was able to perform one or two step instructions was "vague and did not adequately explain Plaintiff's vocational abilities."  (Tr. 44) The ALJ opined that these doctors' opinions were consistent with the overall medical evidence in the record.  The ALJ additionally found that Grogan "experiences moderate limitations in all domains of functioning and provide[d] restrictions in the RFC to accommodate her depression and anxiety."  (Id.)  The ALJ cited to the medical records in support of his decision.

The ALJ cited additional evidence in support of his moderate mental limitations finding, including Grogan's education, her reported level of interaction with others, her ability to complete self-care activities and manage finances, and minimal or normal findings on examination regarding memory, intelligence, fund of knowledge, demeanor, eye contact, orientation, concentration, insight, and judgment (Tr. 39-40)

The ALJ also found consultive clinical psychologist Dr. Lipsitz's opinion to be persuasive.  (Tr. 44)  Dr. Lipsitz examined Grogan on February 1, 2023.  (Tr. 645)  Dr. Lipstiz found that Grogan did not have any significant limitation in the areas of understanding, remembering, or applying information.  She had a moderate limitation in interacting with others and in her ability to adapt and manage herself.  He opined that Grogan had a mild to moderate limitation in the areas of concentrating, persisting, and maintaining pace.  (Tr. 647)  The ALJ reviewed Dr. Lipsitz report and cites to specific findings in his report.  The ALJ concluded that Dr. Lipsitz's opinion is supported by objective evidence and is "generally consistent with the overall medical evidence." (Tr. 44)  However, the ALJ did conclude from the entire record that Grogan had moderate limitations in the areas of understanding, remembering, or applying information (where Dr. Lipsitz opined that she did not have any limitations in these areas).  The ALJ acknowledged this limitation in Grogan's RFC by limiting her to understanding,

remembering, and carrying out simple, routine job tasks with little to no change in routine.  (Tr. 41)

The ALJ next discussed his review of reports submitted by psychotherapist Michael DiBernardo.  In a letter "To Whom It May Concern" dated November 10, 2022, Dr. DiBernardo opined that Grogan "continues to experience severe anxiety at times which has inhibited her ability to work."  (Tr. 622)  The ALJ found this statement to not be persuasive because the question of whether a claimant is disabled and unable to work is reserved to the Commissioner.  (Tr. 44) In addition, the ALJ stated that Dr. DiBernardo's opinion did not provide a "function-to-function" analysis of Grogan's vocational abilities.  The ALJ found that the opinion was not consistent with Dr. Lipsitz's clinical observations and the overall record.  The ALJ's rejection of Dr. DiBernardo's ultimate opinion of Grogan's ability to work is supported by substantial evidence in the record.

In assessing Grogan's medical limitations, including her symptoms associated with migraine headaches, the ALJ found the findings of state agency medical consultant Dr. Sandvos to be somewhat persuasive.  (Tr. 23])  Dr. Sandvos reviewed the available evidence at the initial level of administrative review and opined, in light of Grogan's migraines, that she should avoid concentrated exposure to extreme heat and cold; had no limitations regarding humidity, wetness, and noise; and should avoid even moderate exposure to vibration, gas, dust, fumes,

and hazards (machinery and heights).  (Tr. 89)  The ALJ found that Dr. Sandvos adequately explained her opinion but that it was not "entirely consistent with the overall medical evidence of record." (Tr. 44)  The ALJ adopted most of Dr. Sandvos' opinion but asserted that Grogan should avoid even moderate levels of noise and that she should avoid concentrated dust, gas, and fumes.  (Tr. 41)   In support of these recommendations the ALJ cited to the record including Dr. Sandvos' report and Grogan's records from her visits to SSM Health Medical Group in which Grogan reported that gabapentin works well for lesser headaches and, if she takes it early enough, prevents a headache from turning into a full blown migraine.  (Tr. 44 and 739)

Dr. Ceaser conducted the administrative medical review at the reconsideration level and found that Grogan was unlimited in climbing stairs, stooping or bending; had no limitations for noise or vibrations; and should avoid even moderate exposure to fumes, odors, and gases. (Tr. 110-111)  The ALJ found this opinion to be partially persuasive.  (Tr. 44)  The ALJ found that this opinion was adequately explained and generally consistent with the evidence of record. However, the ALJ's RFC provided additional restrictions regarding climbing stairs, stooping, bending, and noise levels. The ALJ determined that Grogan should be restricted to a range of work at the light exertional level due to her migraines

17

and back pain. (Tr. 44)  The ALJ's analysis of the medical consultants opinions is supported by substantial evidence in the record.

Grogan also asserts that the RFC is not supported by substantial evidence because the ALJ relied on the opinions from the state agency medical and psychological doctors.  Grogan cites to the decision in Gillette v. Barnhart, 291 F. Supp.2d 1071, 1077 (D.N.D. 2003) for the proposition that the opinions of non-examining physicians ordinarily do not constitute substantial evidence on the record as a whole.  However, the law has changed since that opinion was issued in 2003.  See Feldhaus v. Saul, No. 4:19-CV-2249-SPM, 2020 WL 5594062, at *5 n.1 (E.D. Mo. Sept. 18, 2020) ("[f]or claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated." (citing § 416.920c)). The Eighth Circuit has been clear that it does "not require that every aspect of an RFC finding be supported by a specific medical opinion, only that it be supported by some medical evidence of the claimant's ability to function in the workplace." Twyford v. Comm'r, Soc. Sec. Admin., 929 F.3d 512, 518 (8th Cir. 2019) (internal quotation and citation omitted).  The ALJ reviewed the medical opinions in the record and developed the RFC based on the parts of those opinions that were supportable and consistent.

Moreover, the RFC contained restrictions in various areas to avoid triggering Grogan's migraines and to account for her scoliosis.  In addition, the records from

18

SSM Health Medical Group notes that Grogan's use of gabapentin greatly helped her in avoiding full blown migraines.  As a result, the RFC is supported by substantial evidence in the record.

### Conclusion

Based on the record as a whole in this case, I find that the ALJ's decision finding Grogan is able to perform light work with modifications is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that** the final decision of the Commissioner of Social Security is affirmed.

A separate Judgment is entered herewith.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 31st day of March, 2026.